You know, these cases, they've allocated, I think the rest of them as well, 20 minutes and you probably, you ought to be able to do it in 10, huh? You've got to cut to the 20 minutes and I'm going to be very brief. I'm going to be very brief. I will focus on two. Essentially, we contend that the trial court, or Judge Coyle, the district court, essentially made two errors. In the first, he failed to apply controlling California law relating to the construction of insurance policies. And two, he focused on actions of a thief in determining coverage under the policy. With regard to the first issue, I'm going to note only that How much was the loss here? Around $100,000 with interest and such. And Judge Coyle, in his decision relating to coverage, does not cite a single California authority. Instead, he relied on a Montana and a Louisiana case. Primarily the Louisiana case, which I'm just going to briefly note, was decided based on civil law statutes, Louisiana statutes, that if not entirely contradictory, were inconsistent with California law, particularly with respect to the interpretation and construction of exclusions, as I will touch on later. As this court found in Avery's, which is cited at page 20 of our reply, the court has found that controlling law, California law, is to be applied. That's also recently been confirmed by this court in the Amedeo case, which was decided last year based on California law. The second issue is one I really want to touch on. The insuring language in the policy has two components. This was overlooked by the court. The insuring language talks about a covered cargo. The court, in focusing on theft, seemed to blend the two and failed to appreciate the significance and the difference. One may have covered cargo but not have a covered loss or covered event. Conversely, you can have a covered event but not covered cargo. This is important because Respondent, in their briefs, gave an example of a hypothetical in which they claimed our position would create an absurd result. Not true. His hypothetical was a stolen tractor driven to New York where it is hooked up to a trailer. In that event, certainly I would contend you have a covered event, you have a theft, but you do not have covered cargo because the policy speaks of cargo in the possession of the insured under a bill of lading and it also speaks of a mechanism in the policy, a trigger mechanism where to have cargo covered, you have to hook it up and haul it with a scheduled tractor significantly. Tractors are not covered by this policy. That's in the record. There was a separate property policy. The use of scheduled tractors was merely a trigger mechanism so that you could, so that it would trigger coverage for cargo. The insured had to use scheduled tractors to haul cargo in order to have coverage. So But let me, if they had just broken into the back of the trailer and not hooked it up to the tractor, was there a policy that covered that? No. That would have been the cargo policy. The cargo policy is to, is designed to cover cargo that is called, we contend, that is in transit in the possession of But here the cargo was at the lot or at the Yes. At the, I don't know, the truck stop or whatever it's called. Correct. It had arrived Friday evening. And it had been disconnected from the tractor. Exactly. The truck driver went home. It was there on the lot in the trailer. Yes. The truck driver disconnected and went home. And what if some thief pulled into the yard and unloaded the tractor, took all the goods inside? I contend Would that have been covered? I believe it would be for this reason. Canal presents a position that says, in essentially saying, is there coverage? The question for this court is, is there coverage? And in doing so, it argued successfully to the underlying court that the question of whether a thief could trigger coverage, it is undisputed that coverage had been triggered from the time the vehicle was hooked up in the East Coast and driven across the United States to Fresno. The question is not whether truck coverage was triggered. That's been admitted. The question is whether coverage was then terminated by an act. The significance of that is this. We are now dealing with a limitation or an exclusion. Because in this case, you have coverage that the insurance company claims was terminated by the conduct of the insurer. The significance of that is, in California, the law is clear, and it's this Ninth Circuit found in Saltarelli, where you have an exclusion, attempt to limit coverage. It must be clear, plain, and conspicuous. In this case, we submit that it is neither clear nor plain, insofar as reading the definition, you simply have it stating that to have insurance on cargo, it must be attached to a covered or scheduled tractor. A reasonable insured could determine that that means it triggers coverage, which would be explained. If the insured went to find out what was excluded, he would go to page one, where they are prominently listed. The court, I'm sure, has reviewed and found there is nothing in there that excludes any kind of theft, and there is nothing in there that excludes or applies an exclusion where the insured temporarily disconnects. There is nothing in there that would indicate to a reasonable insured that if he disconnects, it terminates coverage. That is such a drastic result that we submit that the law in California requires them to put it not only in clear and plain language, your coverage will terminate upon disconnection for any time, but it must be conspicuous. As this Court has seen, as in Salterra, where there was the court found you had to correlate three different definitions, here you have a couple of provisions, and you have a definition, which coincidentally is all the way at the bottom of page two, the very last thing, is this reference to a definition of a scheduled vehicle. It is far removed from the exclusions that are listed prominently on page one. It is not bolded. It is not underlined. There is nothing in there that would indicate to an insured, and we submit that had the district court appropriately considered at least and applied California law or even the Salterra case, it would have concluded that even assuming that one could find this was plain or clear, which we don't believe, it had to be conspicuous in the front. And under the cases we've cited, the courts have found it's unenforceable if it is not conspicuous. Let me ask you another question. We do know, I guess it's undisputed, I guess eventually when they found the trailer, it was connected to the tractor, the covered tractor, and all the cargo was gone. Yes. Now, that didn't happen on the lot. That happened off the lot. Presumably. Where was the tractor-trailer ultimately found in relation to the lot? I'm just curious. Southern California, I believe, somewhere. It traveled quite a distance. Yes. And the point is that viewed, and I believe this case needs to be viewed in the context, but I ask the Court. Do you agree that the trailer must be attached to the scheduled vehicle, the tractor, at the time of the loss? I don't believe that's required under this policy for this reason, because the policy states that a reasonable insured could look at it when it reads it and finds that it should trigger coverage. Isn't that what happened here when they hauled cargo off, it was attached to a scheduled trailer? If we apply a strict interpretation, as Canale suggests, it was hauled across the United States by a scheduled tractor, and when it's stolen, it was hooked to a scheduled tractor. My client scheduled all the tractors. It insured that's the only way it could insure its cargo, and it's fair because that's the only way the insurance company gets its premium. Fairness was raised earlier in a case I know. So it was attached to a scheduled tractor at the time of the loss. We believe it was, because the cases we've cited state that the theft. What else is there to argue about? I don't believe there is anything, Your Honor. And if you don't have any questions, I'm going to. Here. Is it your contention that attachment at any time triggers coverage? In other words, all it needs to be is attached. This particular cargo has to be attached at some time to a covered power unit, and there's coverage on the cargo until it's unloaded? Is that your position? Not exactly, Your Honor. Only for this reason. The ultimate test that you were talking about it being hooked up and hauled all the way across the country. Take an example if the insured had used a non-scheduled tractor and had hired someone else to haul it. Or their example, where someone steals a scheduled tractor, goes to cargo that was never hauled with schedule. That may raise an instance where an insured would not have an objectively reasonable expectation of coverage. Here we have an insured who did everything right. The only thing that happened is the truck driver disconnected and went home to Mama. He was going home. And the court may note that on page, I believe it's section C7, there is a condition in there if the insured is looking for exclusions that state if you leave cargo, a scheduled vehicle, for more than 72 hours in a lot, excluding Sundays, that could be an exclusion. Here it was left Friday and the anticipated delivery was Monday, which would have been within. An insured would have assumed that he was acting within the scope of the policy. But whether we apply strict construction or my construction, a reasonable insured has paid his premium. There's no heightened increased risk. He would expect to have coverage under this particular policy and how simple it would be for Canal to simply include language to include this if it wanted to. As far as the bad faith and punitive damages, if the court has any questions, my able partner has accompanied me to help me out on this. License. How far have you traveled? From Fresno, Your Honor. My name is Ken Sullivan. Well, we can give you at least two minutes if you're from Fresno. Thank you, Your Honor. The district court did not get to the issues of advice of counsel or a genuine issue. Those were issues that Canal requested be summarily adjudicated. We believe the court has the power to review those issues de novo under the cases cited in the brief. We would ask the court to consider the numerous factual issues that we raised in opposition to the summary adjudication requests and rule that there are factual issues that require trial on those two issues. Specifically on advice of counsel, if I can just very briefly point out on page 140 of the excerpts of record, Lon McCarty was the person most knowledgeable from Canal Insurance who was designated for purposes of being deposed on behalf of Canal. And Mr. Canal said in his deposition that he didn't think that physically attached needed any interpretation. He said that there was never any question in his mind that the trailer had to be physically attached at the time the tractor was stolen. Not at the time the trailer and the cargo was stolen, but at the time the tractor was stolen. We believe that testimony from Mr. McCarty, who had the ultimate decision power and in fact made the decision in this case, is sufficient for a jury to conclude or infer that Canal got advice of counsel simply as a pretext, as a method of verifying a decision that they had already made. Further, advice of counsel requires that the attorney be given complete and full information or that they do an investigation on their own. Ms. Gardner made it very clear during her deposition in the excerpts or pages 205 and 206 in the excerpts that she was only given the first report, which in fact is a misnomer because it wasn't the first report from the adjusters. It was the second or the third report. She wasn't given the witness statement from the truck driver, John Taylor. She wasn't given the witness statement from Peter Schneider of TGS. She wasn't given the photographs of the truck that showed marks presumably from a screwdriver to break into the truck through the wing window. She wasn't given this information. She never did any follow-up information on the issue of break-in, physical evidence of break-in, which was another ground on which Canal denied this claim. Neither she nor Canal nor the adjusters nor anyone else did any follow-up investigation. Further, if you look at her opinion in page 52 of the excerpts, she said that there was no case which deals with the specific issue. And she said on page 52 of the excerpts in her opinion to Canal, an argument can be made that there's no coverage for this claim. And she admitted in her deposition she never did any research of California law, never researched California rules of interpretation, never attempted to apply California interpretation rules, and believed in her mind that as long as there was an argument that could be made, that would be sufficient grounds to deny coverage. There are also numerous factual disputes regarding the genuine issue doctrine. The case law including the Amadeo, which is a case from this circuit, says that the genuine issue doctrine applies when it's undisputed or indisputable that the basis for the denial of benefits was reasonable. For example, even where under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. Here, information was given to Canal, it was available to Canal, break-in, photographs of the truck, evidence that there were damage to the wing window where the adjuster said this is where most break-ins occur, that information was ignored and not forwarded to the Coverage Council. That was clearly a one-sided review, clearly a one-sided investigation, and it was inadequate as a matter of law. We would ask the Court simply to decide, though, if it reverses the judgment as to the interpretation of the policy and reverses the judgment for Canal, that it also consider the summary adjudication issues and deny them based upon numerous disputed facts. Thank you. Thank you. Thank you. Good morning, Your Honor. Jim Wilkins. May it please the Court, representing Canal Insurance Company. I think I'll change my argument, try to fit the ten-minute rule and focus on some of the questions that were raised here. One thing that's been suggested is that the trial court applied the incorrect analysis for interpreting contracts. And counsel argues that, gee, it should be an exclusion, it should be a limitation. And it cites two cases. The Saltier case is one, saying, gee, it's just like that case. The Saltier case is a case where it was a 43-page, single-spaced letter, and they're referring to all kinds of definitions all over the place. This is a two-page policy. If you go to the experts records, two pages, 27 and 28, and you go to the insuring language, we pay for accidental loss or damage from any covered causes of loss to the covered cargo. Now, the only way to figure out what that means is you've got to read next. You read what covered cause of loss is, and then you read what covered cargo is. And how do you figure out what a scheduled vehicle is? Until you go to the second page. So it just reads, you can't figure out what is insured in the insuring agreement until you go through this three-step process. Unlike the Saltier case or unlike the Thompson case that they cite regarding U.M. insurance where permissive user coverage was dropped down to 1530, whereas the named insured would have had 100, 300. And they said, gee, you put this provision limiting coverage somewhere else in the policy, not in the insuring agreement, not in an exclusion. What do you want us to look at? I've got it here. If you go coverage 1 on page 27, coverage 1, we will pay for accidental loss. Let me find it. Coverage 1. We will pay for accidental loss or damage from any covered causes of loss to covered  Correct. Then if you go to coverage A, under A, it says what covered cause of loss is. Covered causes of loss means loss for which you are legally liable while cargo is in your care. Correct. Out of your control. Okay. Okay. All right. So that was met, wasn't it? That is the covered cause of loss. Theft is. That's correct. Then we have to figure out what is covered cargo. So we go to coverage B. Covered cargo means cargo of others and transit under bill of lading. Tariff or shipping receipt. The cargo must be on a. It should be scheduled vehicle. Scheduled vehicle or at a scheduled location shown on the declaration page. So to figure out scheduled vehicle, now we have to go to the definitions. So we just flip over one page. The bottom of the page talks about there's only a couple of definitions, and one is what's a scheduled vehicle. Yeah. Okay. It's page 28. 28. Okay. Scheduled vehicle. All right. Which one are you looking at? It's B4. Any trailer physically attached to a scheduled tractor. That's a scheduled vehicle. Correct. Okay. They're arguing that this is a limitation or exclusion when, in fact, this is a grant of coverage. This is telling them what is covered. It's not limiting it. It's telling you here are four things that constitute a covered vehicle. When I look at all four of these provisions, just doing what you exactly did, I come to the conclusion, I don't know about my colleagues here, but it looks like there's coverage. Except when you look at what an accidental loss from a covered cause of loss is. Where are you looking now? Again, the insuring agreement, number one. Tell me the page. Page 27. 27. We will pay for accidental loss or damage of any covered causes of loss of two covered cargo. So here the theft, there's no question that this tractor was attached to a different trailer on the night of the theft. The thief unhooks that tractor from a different trailer, attaches it now to this trailer. It's still a scheduled tractor, though. The tractor is scheduled. But the theft commenced when they took this tractor. Where does it say that in the policy? Because it's got to be a covered cause of loss. What is the loss? The loss is the theft. Of the cargo. Correct. And at the time the cargo was stolen, where was it? It was an unattached trailer. When does the loss occur? How can you say it was stolen when it was unattached?  They didn't open up the trailer and start taking the cargo. Although under their scenario it wouldn't make any difference. But that's correct. It was sitting there unattached. But once a thief takes possession of the vehicle, it's a theft. And we've cited all kinds of cases. They were originally arguing it wasn't even a theft. But we've cited case law in California under California law. Once you take possession and control a property, it's a theft. They left the same tractor on there. And a thief came in and drove that tractor that hauled it across country. Correct. It had just been sitting there. Now, are these tractors owned by the company or are they owned by the driver? I'm not sure, Your Honor. I'm not sure. Okay. Some are owned by drivers. The paper said both. It could be. It's a scheduled tractor. And this particular one, I don't know. But as long as it's a scheduled tractor, it really doesn't matter who owns it. If that tractor had been left on there over the weekend and the property was stolen and the trailer was stolen, it would be carpet. Correct. Okay. So what difference does it make whether they have that tractor there or some other scheduled vehicle? Because the policy says so. Where does it say that? It's hard to understand the policy if you're just articulating it. Okay. It says we will pay for accidental loss or damage from any covered cause of loss to covered cargo. In order for it to be covered cargo, it must be attached to a scheduled vehicle. Here the cargo is in a trailer unattached. It doesn't get stolen until the tractor, which is stolen, gets attached to it. Once you assume possession and control of that trailer, you have stolen it for purposes of theft in California under California law. Why are you going to assume possession and control over a trailer? Are you going to pick it up and carry it home? You attach it to a tractor, and you've taken possession and control of that tractor. You are stealing that trailer. And it's a covered tractor. Correct. But it's not at the time. At the time that they are commencing that theft, it is unattached. That's not in the policy, though. It is when you read it as a loss. If there's any ambiguity in this policy, you're supposed to interpret it in favor of the insurer to meet their reasonable expectations under California law. That's correct. That's correct. But when it says loss to covered cargo, what is the loss? The loss is when they drove it out of the yard. That's when it got lost. Why isn't it when they steal it in the yard? If there's any ambiguity or any doubt about that, you resolve all of that ambiguity and all of that doubt in favor of coverage. That's basic, fundamental California insurance law. Under Bank of the West, you look at the reasonable expectations and reasonable interpretation. You don't get to the ambiguity issue unless you can read the whole policy first and say it's ambiguous, and you can't get to that construction. And so here, when you say loss to covered cargo, it's not covered cargo until it's attached to a tractor. The theft doesn't occur until it gets attached to the tractor. And so that makes the difference. So then you've got the coverage. Only if it's attached at the time of the theft. Here, it was not attached at the time of the theft. In other words, if the thief goes in and he says, yeah, I think I'll steal this trailer, and I've got to get it out of here. And then he gets a covered tractor and hooks it up. You're saying that at the time he said, I think I'm going to steal this. That's when the theft occurs. I'm saying that at the time that that tractor or trailer is unattached, at the moment that he goes over there and starts taking possession and control of that trailer, he is stealing that, and it's not attached at that time. He has to back the trailer up to it, hook it up. How does he take possession and control of a big trailer? Was he to pick it up or kick the door? Nobody else is going to take that trailer when he's over there stealing it. So he's designated that trailer. I'm taking it. I'm going to take this tractor. I'm going to unhook it from another trailer. I'm going to take this tractor over there and steal that trailer. At the time that that trailer is being stolen, it's not attached. It's the process of stealing it with the unattached tractor that's the loss. The loss is the theft of the trailer. He drives by a yard, and they see this unattached trailer, and it's noontime, and they say, that's a good-looking trailer. I'll bet there's some valuable stuff in there, and I'm going to steal that. I'm going to come back tonight and steal it. The theft happened when he first said to himself, I'm going to steal that? No. It's when he – how is he going to do it? He's going to come into the yard, unauthorized. Now he's on property that he's not authorized to be there, so now he's committing a criminal act, and how is he going to get there? What is he going to do? He's going to go over to the trailer, make sure nobody else is around, make sure nobody's there to stop him, and then he's going to exercise possession and control by getting a tractor and moving it over there and then commencing the process of stealing that trailer. At the time he's stealing that trailer, it's not attached. Your Honor, if I could just – Hey, that's a hard argument to sell to me, too. Well, Your Honor, when you take – this wasn't something out of the blue. I mean, there is that inner city case that the district court relied on that says this is a clear and unambiguous provision in the policy. The argument that they were making at the trial court was because this is in transit, until it gets to delivery, it's all in transit, and so when you ask the question, gee, does it make any difference if the trailer had never been attached, just sitting there, and somebody has stolen this goods out of it, would it have still been covered? And his answer was yes, because that's their interpretation, is that as long as it's in transit, regardless of the policy language, it's still covered. Where the inner city case says, no, this language is clear, is unambiguous. That's a harder argument. I understand, but the point is inner city does say it's clear and unambiguous, that this provision is. But if I could, just sensing where we may be going, and I'd like to address a couple of the comments regarding the bad faith and punitive damages. There are no factual disputes here that would prevent an adjudication of bad faith and punitive damages to get them stricken from this case. They conducted a reasonable investigation. Yes, they were of the opinion that this was not covered, but they didn't deny it on that basis. They sought expert coverage advice, and the coverage advice told them, yes, this is an appropriate denial. That's not bad faith. You know, even though we have de novo review on a motion for summary judgment, where the district court has ruled on summary judgment, the district court are never addressed. That is correct, but they're asking you to do it, and so if you're going to do it, I accept that, and I say that the record before you. Let me ask you this. Should we just remand it back to the district court, but, you know, the court can do whatever it wants with it? That is an option, but I think that there is case law that says that for any reason, even if the trial court didn't rule on a particular ground, if there's a ground to affirm the trial court's holding, in this case, summary adjudication of all claims, so summary adjudication of bad faith and punitive damages, if there are grounds that exist here, this court certainly has discretion to affirm that for grounds other than what the district court did. And so we accept their notion that the facts are before the court. This court can decide that, and looking at the facts as undisputed as they are, what they're doing, they're trying to create kind of a red herring here, and they say, well, gee, the investigation wasn't complete because there was some issue about how it was broken into, whether it was, you know, evidence of broken entry or something like that. That doesn't matter to the issue upon which they denied coverage. You could have a thousand different reasons to deny coverage and not investigate all a thousand. You take the one that you're going to deny, and if that's a reasonable position to take at the time, regardless of what other investigation could be done on these other issues, that's not a basis for bad faith. Why do people buy these policies? So they can get into arguments. You can say that with every insurance policy, Your Honor. I mean, the terms are to be interpreted, and, yeah, there will be arguments in certain cases. But this wasn't just some absurd position that was taken. It's a position that there's published cases for. It's a position that the district court agreed with. So how can you say that that's an inherently unreasonable interpretation of the policy to support a claim of bad faith? And, again, with the punitive damages, same thing. Where's the evidence of clear and convincing evidence of malice and oppression? I mean, there was nothing offered. You would never be a bad faith claim as long as it got up to the court of appeal. No. What I'm saying is when you put it all together, here, when you have a situation where the interpretation, it is a reasonable interpretation under the facts, but even with that, they don't deny it. What they do is then they go out and they get expert legal coverage advice. Coverage counsel that they specialized earlier, we had that counsel that was representing the government and represented the government in all the civil marijuana cases, that's what this firm is to the cargo industry. This firm does insurance coverage nationwide for cargo interpretation, and that's what this company did. It went to that law firm and got advice that said this is an appropriate denial. So when you put all those facts together, it's a reasonable position to take. And there's cases we've cited in our brief where on that kind of a factual situation when the facts are undisputed, that it is appropriate for summary adjudication that there is no bad faith. We have law firms that do nothing but interpret policies. Yes. Everything's a business, huh? Specialization. You know, I've seen a number of opinion letters, but I can't think I've ever seen one quite like this one, where she simply says I believe that an argument can be made. Later on in the... Especially they offer their firm opinion. That's all they're hedging. In the opinion, it goes on and it says that a denial would be appropriate under the facts of this case. That's the advice that they give. And in her deposition, she makes clear that that's the advice that she gave. I mean, you're going to have a situation, okay? They keep on saying, well, gee, the district court didn't apply any California law. There is no California case that interprets this policy. And so when you sit here as an insurance company and you say, okay, here's the issue, what are we to do? Now, we don't think it covers this case, but you know what? Let's be cautious here and let's get advice of counsel, not just any counsel, but counsel that specializes in cargo coverage. And let's go ask them what they think. And to say, okay, this is what we believe, that is what she believes. She can't say there's a case right on point. That's a good jury argument. Your Honor, based on the case law, under undisputed facts like that, this court can say as a matter of law that that's the appropriate, that that's not an act of bad faith under those circumstances. When you get advice of counsel under those circumstances, that is not bad faith, Your Honor. We got your argument. Thank you. Thanks. All right. We'll call the next case. That's Kuth versus Traveler's Insurance.
judges: Pregerson, Beam, Paez